GEORGE R. HALE and PAMELA S. HALE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, REspondent
Hale v. Commissioner
Docket No. 4908-78.
United States Tax Court
T.C. Memo 1979-481; 1979 Tax Ct. Memo LEXIS 45; 39 T.C.M. (CCH) 614; T.C.M. (RIA) 79481; December 3, 1979, Filed Nathaniel J. Cohen, for the petitioner. Richard F. Stein, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $2,000 in petitioners' Federal income tax for the year 1975. The sole issue is whether petitioners are entitled to the $2,000 credit against tax for the purchase or construction of a new principal residence, all as is provided for by section 44(a) and (e). [1]
FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioners are husband and wife whose legal residence was Virginia Beach, Virginia, when the petition *46 herein was filed. For the taxable year in issue they had filed a timely, joint income tax return (Form 1040) with the Internal Revenue Service Center, Memphis, Tennessee. In 1971 the petitioners acquired a heavily wooded vacant lot, which is currently known as 3737 Little Neck Point, Virginia Beach, Virginia. This is the land on which the construction of petitioners' new principal residence here in issue occurred in 1975. Petitioners began studying plans and drawings for their new home in 1974. In January or February 1975, they discussed plans and drawings with Ashley S. Gilliam (hereinafter Gilliam), a long-time general contractor, and on February 21, 1975, they ordered plans for the residence here in issue from House & Garden Reader Service, New York City. Petitioners received these plans some time between February 24 and the middle of March 1975, and petitioners then took them to Gilliam, who promptly began contacting, and obtaining bids for the construction of the residence here in issue from subcontractors. On April 6, 1975, Gilliam submitted to petitioners a Proposal Specifications and Estimate for the construction of the residence here in issue and on that same date *47 a contract naming Gilliam as the general contractor for the residence in issue was signed. On April 30, 1975, petitioners' application for a loan to construct the residence in issue was approved, and on May 19, 1975, the lot in question was surveyed, and on June 3, 1975, a permit to build said residence was issued by the City of Virginia Beach, Virginia. When the land was surveyed on May 19, 1975, it was still heavily wooded. On June 5, 1975, the footings for the residence in question were dug and poured under Gilliam's supervision. On April 6, 1975, or shortly thereafter, petitioners went to their lot and drove four stakes into the ground to locate the site and position of the residence in question. Clearing the land of trees in preparation for building was begun on about May 22, 1975. Petitioners were able to and did occupy the house in issue as their new principal residence before the end of 1975. OPINION Petitioners claimed the maximum credit allowable of $2,000 as a credit against tax in their tax return for the year in issue. Respondent apparently agrees that the amount of the claim is not overstated but has determined that no credit is allowable because construction *48 of the residence in issue was not begun prior to March 26, 1975. Section 44 provides, in pertinent part: SEC. 44. PURCHASE OF NEW PRINCIPAL RESIDENCE. (a) General Rule.--In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer. (b) Limitations.-- (1) Maximum credit.--The credit allowed under subsection (a) may not exceed $2,000. * * *
(e) Property to Which Section Applies.-- (1) In general.--The provisions of this section apply to a new principal residence-- (A) the construction of which began before March 26, 1975. * * *
(2) Self-constructed property begun before March 13, 1975.--In the case of property the construction of which was begun by the taxpayer before March 13, 1975, only that portion of the basis of such property properly allocable to construction after March 12, 1975, shall be taken into account in determining the amount of the credit allowable under subsection (a). [Emphasis supplied.] Section 1.44-2(a)(1)(i), Income Tax Regs., provides *49 that the commencement of construction, as provided for by the statute, is considered to have begun at the time actual physical work of a significant amount has occurred on the building site. Land preparation and improvements are ruled out but the digging of footings, excavation of the building foundation, and pouring of floor slabs, are approved as indicating the beginning of construction as provided for by the statute. Under the facts of the instant case, as in Morris v. Commissioner, 73 T.C.     (Nov. 19, 1979), it is not necessary for us to decide exactly when construction began for it is entirely clear that it was not begun before March 26, 1975. By that date the petitioners had ordered plans from House & Garden Reader Srvice, they may have discussed them with Gilliam and Gilliam may have started contracting subcontractors. Nothing else of any significance had occurred. The lot had not been cleared, it had not been surveyed, and even the four stakes to locate the site of the residence had not been driven into the ground. The applicable regulation, section 1.44-2(a)(1)(i), Income Tax Regs., supra, defines the meaning of beginning of construction, as used in the *50 statute, as commencement of actual physical work of a significant amount on the building site and included the digging of footings as such work. The record shows that this last event did not occur until June 5, 1975. In Reddy v. United States, 436 F. Supp. 377 (N.D. Ill. 1977), the court considered and approved Treasury Regulation 1.44-2 as a reasonable implementation of the statute in a factually similar case. We have agreed with this conclusion in Morris v. Commissioner, supra, and we again do so here.Section 44 does not define "construction of which began" and the regulation is clearly reasonable. United States v. Cartwright, 411 U.S. 546 (1973), Bingler v. Johnson, 394 U.S. 741 (1969). Petitioners' arguments are hard to follow. They seem to contend that the definitions and examples of the regulation (as to the beginning of construction) are unreasonable and inconsistent with the statute because their residence was self-constructed, while such statute was designed to bolster the faltering home construction industry. Petitioners ignore the express language of section 44 which makes it *51 applicable to a residence "purchased or constructed by the taxpayer." Petitioners then seem to quarrel with the statute itself in that it provides (as to self-constructed property which was begun by taxpayer before March 13, 1975) that only such construction occurring after March 12, 1975, shall be taken into account in determining the amount of the credit. Petitioners point to this as an inconsistency in dates between purchased and self-constructed property. Petitioners ignore the statute's requirement that construction must have been begun before March 26, 1975, in either event. From all of the above, petitioners somehow arrive at the conclusion that secton 1.44-2(a)(1)(i), Income Tax Regs., is not reasonable when applied to self-constructed property; that they "commenced a continuing course of conduct" beginning in February 1975, when they ordered plans, and that they were therefore "within the spirit" of section 1.44-2(a)(1)(i), Income Tax Regs, We find no weight in petitioners' arguments and hold that construction of the residence here in issue did not begin before March 26, 1975, and petitioners are, therefore, not entitled to the claimed credit. Decision will be *52 entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩